1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11   JOANNE D. LENCH,                    Case No. 8:15-CV-01482-GJS

12            Plaintiff

13        v.                             **MEMORANDUM OPINION, AND
                                         ORDER**
14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

15            Defendant.

16

17            **I.    PROCEDURAL HISTORY**

18        Plaintiff Joanne D. Lench ("Plaintiff") filed a complaint seeking review of

19   Defendant Commissioner of Social Security's ("Commissioner") denial of her

20   application for Disability Insurance Benefits ("DIB").  The parties filed consents to

21   proceed before the undersigned United States Magistrate Judge [Dkt. 11 & 12] and

22   motions addressing disputed issues in the case [Dkt. 18 ("Pltf.'s Br.") & Dkt. 19

23   ("Def.'s Br.")].  The Court has taken the motions under submission without oral

24   argument.  For the reasons stated below, the Court AFFIRMS the decision of the

25   Commissioner.

26        **II.   ADMINISTRATIVE DECISION UNDER REVIEW**

27        On December 7, 2012, Plaintiff filed an application for DIB, alleging that she

28   became disabled as of December 1, 2012.  [Dkt. 17-3, Administrative Record

("AR") 22.]  The Commissioner denied her initial claim for benefits.  [AR 22; 94-8.]  On April 8, 2014, a hearing was held before Administrative Law Judge ("ALJ") Helen E. Hesse.  [AR 41-76.]  On April 30, 2014, the ALJ issued a decision denying Plaintiff's request for benefits.  [AR 19-40.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled.  *See* 20 C.F.R. § 404.1571.[1]  At step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity during the period of her alleged onset date of December 1, 2012 through her date last insured of June 30, 2013."  [AR 24.]  At step two, the ALJ found that Plaintiff suffered from "the following severe impairments: osteoarthritis of both knees, low back, and neck; fibromyalgia; obesity; depressive disorder, not otherwise specified (NOS); and anxiety disorder, NOS."  [*Id.*] (citing 20 C.F.R. § 404.1520(c).  Next, the ALJ determined that through the date last insured, Plaintiff did not "have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1."  [AR 25.]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

> [S]edentary work as defined in 20 CFR 404.1567(a) …
> lift and or carry 10 pounds occasionally and less than 10
> pounds frequently; sit for six hours in an eight hour day,
> with normal workday breaks; stand and/or walk for two
> hours in an eight hour workday, with normal workday
> breaks; occasionally climb ramps and stairs, bend,

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520.  The steps are as follows:  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two; (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four; (4) Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five; (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(b)-(g)(1).

1
2
3
4
5

balance, stoop, kneel, crouch, and crawl; she is precluded from climbing ladders, ropes, and scaffolds, working around unprotected heights or dangerous machinery, performing jobs requiring hypervigilance, being in charge of safety operations of others or intense interpersonal interactions such as taking complaints or encounters similar to those experienced by law enforcement or emergency personnel.

6   [AR 27.]  Applying this RFC, the ALJ found that through the date last insured,

7   Plaintiff was able to perform her past relevant work as a receptionist and/or travel

8   agent and therefore was not disabled.  [AR 35.]  Plaintiff sought review from the

9   Appeals Council, which denied review.  [AR 1-4.]

10   ### III.   GOVERNING STANDARD

11   **I.   General Standard**

12   Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to

13   determine if: (1) the Commissioner's findings are supported by substantial evidence;

14   and (2) the Commissioner used correct legal standards.  *See Carmickle v.*

15   *Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d

16   1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a

17   reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

18   *Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see*

19   *also Hoopai*, 499 F.3d at 1074.  The Court will uphold the Commissioner's decision

20   when the evidence is susceptible to more than one rational interpretation.  *Burch v.*

21   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

22   Even if Plaintiff shows that the ALJ committed legal error, "[r]eversal on

23   account of error is not automatic, but requires a determination of prejudice."

24   *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012).  "[T]he burden of showing

25   that an error is harmful normally falls upon the party attacking the agency's

26   determination."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (internal

27   citation omitted).  And "[w]here harmfulness of the error is not apparent from the

28   circumstances, the party seeking reversal must explain how the error caused harm."

1    *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011).

2           Courts have "affirmed under the rubric of harmless error where the mistake

3    was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability

4    conclusion." *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir.

5    2006).  In sum, "ALJ errors in social security cases are harmless if they are

6    'inconsequential to the ultimate nondisability determination' and … 'a reviewing

7    court cannot consider [an] error harmless unless it can confidently conclude that no

8    reasonable ALJ, when fully crediting the testimony, could have reached a different

9    disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)

10   (quoting *Stout*, 454 F.3d at 1055-56).

11   **II.     Standard for Step Four Determinations**

12          At step four, the claimant has the burden of showing that she is no longer able

13   to perform her past relevant work.  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir.

14   2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)).  The ALJ must

15   make findings of fact regarding the claimant's RFC, the physical and mental

16   demands of the claimant's past work, and whether the claimant can return to her

17   past relevant work "either as actually performed or as generally performed in the

18   national economy." *Lewis*, 281 F.3d at 1083; Pinto, 249 F.3d at 845.  ALJs may use

19   either the "actually performed test" or the "generally performed test" when

20   evaluating a claimant's ability to perform past work.  Social Security Ruling

21   ("SSR") 82-61, 1982 WL 31387.  Typically, when determining how the claimant's

22   past relevant work was actually performed, "the claimant is the primary source for

23   vocational documentation, and statements by the claimant regarding past work are

24   generally sufficient for determining the skill level; exertional demands and

25   nonexertional demands of such work." SSR 82-62, 1982 WL 31386.  When

26   determining how the work is generally performed, the ALJ can rely on the

27   descriptions given by the Dictionary of Occupational Titles ("DOT") or a vocational

28   expert ("VE").  *See* SSR 82-61, 1982 WL 31387; *Johnson v. Shalala*, 60 F.3d 1428,

1  1435 (9th Cir. 1995).

2      However, to properly rely on the DOT when the DOT's job description

3  requirements do not include all of the claimant's exertional and non-exertional

4  limitations, the ALJ must expressly explain in the decision why the claimant can

5  work despite this divergence between the DOT and the claimant's limitations.

6  *Pinto*, 249 F.3d at 847 ("[I]n order for an ALJ to rely on a job description in the

7  [DOT] that fails to comport with a claimant's noted limitations, the ALJ must

8  definitively explain this deviation." (internal citation omitted)).  If necessary, the

9  ALJ can rely on the testimony of a VE to support her conclusion if the testimony is

10  based on evidence supported by the record.  *Johnson*, 60 F.3d at 1435 ("an ALJ may

11  rely on expert testimony which contradicts the DOT, but only insofar as the record

12  contains persuasive evidence to support the deviation.").

13              **IV.    DISCUSSION**

14      Plaintiff asserts that the ALJ erred in finding that Plaintiff could perform her

15  previous jobs both as:  (1) generally performed in the national economy; and

16  (2) actually performed.  In regards to the ALJ's application of the "generally

17  performed test," Plaintiff asserts that the VE's testimony that Plaintiff could perform

18  work as a receptionist or travel agent conflicted with the DOT, and the VE failed to

19  provide sufficient support to justify his conclusions.  The Commissioner argues that

20  the ALJ did not err in relying on the VE's testimony because there was no conflict

21  between the VE's testimony and the DOT.  The Court agrees.

22      The Social Security regulations impose a number of related duties on an ALJ

23  when relating VE testimony to the DOT.  First, the ALJ bears "an affirmative

24  responsibility to ask about any possible conflict between that [VE] evidence and

25  information provided in the DOT."  SSR 00-4p, 2000 WL 1898704.  Second, when

26  a conflict exists, the ALJ must "obtain a reasonable explanation for the apparent

27  conflict."  *Id.*  Third, the ALJ must "explain in the determination or decision how he

28  or she resolved the conflict."  *Id.*

1    Here, the VE testified that a person with Plaintiff's background and RFC for a

2   range of sedentary work could perform the receptionist job (DOT 237.367-038,

3   1991 WL 672192) or travel agent job (DOT 252.152-010, 1991 WL 672372) as they

4   are generally performed in the national economy.  [AR at 35-6; 72-4.]  An ALJ may

5   rely on a VE's answer provided she poses a hypothetical that "contained all of the

6   limitations that the ALJ found credible and supported by substantial evidence in the

7   record."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1217–18 (9th Cir. 2005).  Relying on

8   the VE's testimony, the ALJ determined that Plaintiff could perform her past

9   relevant work as a receptionist and/or travel agent.  [AR 35.]

10    The Court finds that the VE's determination that Plaintiff could perform the

11   job of receptionist and/or travel agent does not conflict with the DOT.  It is true, as

12   Plaintiff argues, that pursuant to the DOT "dealing with people" is required for both

13   jobs.  *See* DOT 237.367-038, 1991 WL 672192; DOT 252.152-010, 1991 WL

14   672372.  However, this requirement is *not inconsistent* with the ALJ's finding that

15   Plaintiff is precluded from "intense interpersonal interactions such as taking

16   complaints or encounters similar to those experienced by law enforcement or

17   emergency personnel."  [AR 27.]

18    Plaintiff attempts to create a conflict between the VE's testimony and DOT

19   by invoking a parade of horribles and characterizing the ALJ's RFC to mean that

20   Plaintiff "cannot perform [any] job where she has to take a complaint."  [Pltf.'s Br.

21   at 10.]  Put simply, Plaintiff misreads the RFC.  A plain reading of the ALJ's

22   findings and hypothetical questions posed to the VE make clear that the ALJ was

23   not precluding the dealing of simple complaints made by customers in the course of

24   her job as a receptionist or travel agent, but rather more "intense" complaints such

25   as those handled by "law enforcement or emergency personnel," or those of

26   someone in a customer service position whose entire job is to deal with complaints.

27   [AR 35-6; 72-4.]

28    ///

6

1    Plaintiff's reading of the RFC is unsupported by the ALJ's opinion, which

2    credits no such limitation in any doctor's opinion[2] and is inconsistent with Plaintiff's

3    own testimony regarding her daily activities.  At the hearing, Plaintiff testified that

4    she goes out to lunch regularly with her close friend of 54 years, spends time with

5    her friend's 25-year-old son with moderate disabilities, and drives her elderly

6    neighbors to their various appointments and shopping trips.  [AR at 55-6.]  Each of

7    these activities is likely to result in periodical complaints, yet Plaintiff successfully

8    performs these functions.

9    Moreover, and critically, under Plaintiff's reading of the RFC, all claimants

10   with slight limitations on public contact would be precluded from taking any job

11   involving public interaction solely because the job comes with the *possibility* of a

12   negative interaction or complaint.  If the ALJ intended to encompass such a strict

13   limitation in the RFC, she would have included specific language to that effect.  In

14   sum, the Court refuses to adopt Plaintiff's wholly unsupported and unrealistic

15   interpretation of her limitations.  Accordingly, the Court finds that the ALJ did not

16   limit Plaintiff to a RFC in which she "cannot perform [any] job where she has to

17   take a complaint" and thus the VE's testimony that Plaintiff can perform her past

18   work does not conflict with the DOT people skills requirement for either job.

19   Next, Plaintiff argues that the ALJ erred by not asking the VE whether his

20   testimony was consistent with the DOT.  The Commissioner all but agrees that an

21   error occurred.  For good reason:  the Ninth Circuit has held that, "in light of the

22   requirements of SSR 00-4p, an ALJ may [not] rely on a VE's testimony regarding

23   the requirements of a particular job without first inquiring whether the testimony

24   conflicts with the *Dictionary of Occupational Titles*."  *Massachi v. Astrue*, 486 F.3d

25   1149, 1152 (9th Cir. 2007); *see* SSR 00-4p, 2000 WL 1898704 (explaining that

26   "[w]hen a [VE] … provides evidence about the requirements of a job or occupation,

27   _____

28   [2] Plaintiff challenges none of these findings here.

the adjudicator has an affirmative responsibility to ask about any possible conflict between that [VE] … evidence and information provided in the [DOT ].").  It takes only a cursory review of the transcript to determine that the parties are right that the ALJ did not ask the magic question.

This mistake does not necessarily entitle Plaintiff to benefits, or even a remand.  Instead, this Court looks to see whether the error was harmless.  *Molina*, 674 F.3d at 1115 ("We have long recognized that harmless error principles apply in the Social Security Act context").  In this context, that means asking whether a reasonable ALJ could find the VE's conclusion—that a person with Plaintiff's RFC could perform her past work as a receptionist and travel agent—inconsistent with the DOT.  The answer is no.

Having concluded that the RFC permits "dealing with people", this Court "can confidently conclude that no reasonable ALJ … could have reached a different disability determination" had the ALJ asked the magic question to the VE.  *See Marsh*, 792 F.3d at 1173; s*ee also* DOT 237.367-038, 1991 WL 672192; DOT 252.152-010, 1991 WL 672372.  And Plaintiff has pointed to no other reason why the VE's testimony would conflict with the DOT.  Where, as here, "there is no evidence that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ('DOT')," "the ALJ's failure to ask whether the VE's testimony was consistent with the DOT was harmless."  *Perea v. Comm'r of Soc. Sec. Admin.*, 574 Fed. App'x 771, 771-72 (9th Cir. 2014).  Accordingly, the Commissioner's decision is affirmed.[3]

/// 

---

[3] Because the Court affirms the ALJ's finding that Plaintiff could perform her previous jobs as generally performed in the national economy, it need not consider Plaintiff's second argument that the ALJ erred in finding that Plaintiff could perform her previous jobs as actually performed.  *Lewis*, 281 F.3d at 1083 (finding that the ALJ must make findings of fact regarding whether the claimant can return to her past relevant work "either as actually performed *or* as generally performed in the national economy.")  (emphasis added).

**CONCLUSION**

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is AFFIRMED and this action is

DISMISSED WITH PREJUDICE; and

(2)  Judgment be entered in favor of the Commissioner.

**IT IS HEREBY ORDERED.**


DATED: June 29, 2016               _____

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE